**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Paul MUNROE, Defendant-Appellant.**

**No. 27230.**

United States Court of Appeals
Fifth Circuit.

Jan. 26, 1970.

Livingston, Miller & Haywood, Thomas A. Livingston, Pittsburgh, Pa., for appellant.

John Paul Munroe, pro se.

D. L. Rampey, Jr., Asst. U. S. Atty., Walker P. Johnson, Jr., U. S. Atty., Macon, Ga., for appellee.

Before BELL, AINSWORTH, and CARSWELL, Circuit Judges.

BELL, Circuit Judge:

This appeal is from a conviction on each count of a sixteen count indictment. Appellant-defendant received concurrent sentences. Eight of the counts are based on forging endorsements on eight United States savings bonds and the other eight counts are based on uttering the same bonds, all in violation of 18 U.S.C.A. § 495. We affirm.

The evidence against appellant consisted, inter alia, of positive identification by a bank employee as to four of the bonds. These four bonds were negotiated through this employee by appellant. In addition, he was connected to the endorsements on all of the bonds by a handwriting expert.

One novel assignment of error is based on the theory that appellant was entitled to a line-up out of the presence of the jury prior to the bank employee being asked to identify him. This theory rested on the idea that appellant was seventy years of age, white-haired and thus easily identifiable. The court did not err in refusing this request. The identification in question was an in-court or in-trial identification as distinguished from the pre-trial out of court identification involved in United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. See also Pearson v. United States, 5 Cir., 1968, 389 F.2d 684. Here appellant was represented by counsel. In *Wade*, counsel was not present at the lineup. In short, the identification here was nothing more than a simple routine in-court quest to arrive at truth. No possible constitutional or statutory right was denied. *Wade* is inapposite. The lapse of time between negotiation and trial and the distinctive appearance of appellant were matters of weight for the jury; these circumstances did not dictate non-admissibility or an out of presence of the jury lineup consisting of other seventy year old white-haired men.

Another assignment of error stems from the failure to require the government to produce a transcript of the testimony of a witness who had testified in a previous prosecution of appellant. It is claimed that the Jencks Act, 18 U.S.C.A. § 3500, made such production mandatory. We disagree. The earlier testimony of the witness had not been transcribed. There was no request for the testimony prior to trial and appellant's counsel participated in the prior trial and was thus familiar with the earlier testimony. We agree with the Seventh Circuit that a transcript of prior testimony, in this factual setting, does not come within the purview of the Jencks Act. United States v. Baker, 7 Cir., 1966, 358 F.2d 18, 19–20.

The last error asserted has to do with mere evidence seized during a search of appellant's room pursuant to a search warrant. This evidence was in the form of documents containing writings which

were used by the prosecution as handwriting exemplars.

■ The argument is that the seized documents were unrelated to and outside the scope of the search warrant. The law is that mere evidence, as distinguished from fruits or instrumentalities of a crime or contraband, may be seized, provided there is a nexus between the items seized and the criminal investigation being undertaken. Warden, Maryland Penitentiary v. Hayden, 1967, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782. In that case the Supreme Court stated the rule as follows.

"* * * The requirements of the Fourth Amendment can secure the same protection of privacy whether the search is for 'mere evidence' or for fruits, instrumentalities or contraband. There must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior. Thus in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction. In so doing, consideration of police purposes will be required. * * * But no such problem is presented in this case. The clothes found in the washing machine matched the description of those worn by the robber and the police therefore could reasonably believe that the items would aid in the identification of the culprit."

387 U.S. at 306–307, 87 S.Ct. at 1650.

See also Gurleski v. United States, 5 Cir., 1968, 405 F.2d 253, 256–260.

■ The question presented here then becomes whether the seized documents were reasonably related to the offense which formed the basis for the search warrant.[1] This, in turn, takes us to the affidavit underlying the issuance of the search warrant.

The affidavit underlying the search warrant indicates that an investigation of appellant was underway in connection with forging and uttering stolen bonds in the Pittsburgh area. The search involved a particular group of bonds which were not the subject matter of the instant prosecution. The affidavit, however, makes it clear that the search was only a part of a more extensive investigation involving appellant, these and other bonds, and his modus operandi of using a bank checking account in an assumed name and forged endorsements on stolen bonds as a part of his general scheme. Appellant was connected in the affidavit directly to the scheme. The seized documents or writings, some signed by appellant, were, in turn, directly related to the investigation. The nexus to the search and for their use as handwriting exemplars in this prosecution was ample.

Affirmed.

■

---

1. Appellant contends that the evidence in question was suppressed by the district court for the Western District of Pennsylvania in a prior trial. A transcript of that proceeding belies this contention. The court refused to admit the evidence during the trial, apparently being of the view that, in order to be admissible, the evidence had to appear criminal on its face. This, of course, is not the law as we understand the law.