Commonwealth *v.* Watkins, Appellant.

Submitted November 17, 1975. Before WATKINS, P.J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John P. Dohanich*, Assistant Public Defender, for appellant.

*Joseph M. Stanichak*, Assistant District Attorney, and *Joseph S. Walko*, District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., March 29, 1976:

This appeal arises from appellant's conviction after a jury trial of two counts of forgery and two counts of theft by deception. In her appeal appellant argues that she is entitled to a new trial because: (1) the proof at trial did not conform to the allegations in the indictment; (2) inadmissible hearsay evidence was used to explain inconsistencies in the identification testimony proffered by the Commonwealth; and, (3) the in-court identification was tainted by an illegal out-of-court confrontation between appellant and the Commonwealth's witnesses. We find no reversible error with respect to these claims, and we will affirm the judgments of sentence. The facts are as follows:

On March 11, 1974, two black females, posing as Joan Bennett and Jeannie Moffatt, cashed a total of four stolen and forged payroll checks at two branch offices of Mellon Bank in Beaver County. The two bank tellers who handled the transactions did so with appropriate circumspection. Although the drawee bank was not Mellon Bank, both "Joan Bennett" (subsequently identified as appellant herein) and Jeannie Moffatt (subsequently identified as appellant's sister), alleged to have accounts with Mellon Bank, and supplied account numbers and driver's licenses in the names of their aliases as identification. In each case the checks were made out for less than two hundred dollars, obviating the

policy of Mellon Bank to have management approval of checks for larger sums. Since both tellers were mildly suspicious and did not hurry the transactions, they both had from five to ten minutes to observe the women. That opportunity proved useful at all stages of the proceedings below, since the bank tellers, Mary Ann Woods and Bonnie Kowalchuck, recalled and were able to identify and describe with precision the stature, attire, demeanor and hair color of appellant and her sister. As the evidence at trial demonstrated, appellant and her sister forged checks on many occasions in Allegheny County, for which offenses both were convicted in state and federal courts. Indeed, appellant's sister, who pleaded guilty to the instant offenses, testified that it was not uncommon for them to spend an entire day visiting various banks and cashing stolen and forged checks using these same aliases.[1]

Appellant contended at trial that prior to March 11, 1974, her sister and she had a serious argument and were not speaking to each other, let alone doing their banking together. Appellant's sister testified that she and another girl, whose name she could not remember, cashed the checks in the instant case, and that appellant was not with her. Appellant also testified and admitted her involvement in a continuing scheme of forgeries with her sister using the names Joan Bennett and Jeannie Moffatt. Obviously, despite the exculpatory evidence, the circumstantial evidence of this on-going forgery scheme, and the solid, unshakeable testimony of Mrs. Woods and Mrs. Kowalchuck identifying appellant, amply supported the jury's verdicts of guilty.

Appellant first argues that the lower court erred in permitting the Commonwealth to amend, at trial, the alias to which the indictment referred in setting forth the facts of the instant forgeries. Apparently, at the

---

1. Appellant sometimes used the alias, Mattie Blackman, and her sister often operated under the "nom de plume," Sandra Riley.

preliminary hearing when the real names of the culprits were initially disclosed to Mrs. Woods and Mrs. Kowalchuck, the witnesses confused the aliases that appellant and her sister had used, so that appellant's indictment erroneously charged her with posing as Jeannie Moffatt.[2] At the suppression hearing and again at trial, however, both ladies unequivocally identified appellant, who was much stouter than her sister, as having used the Bennett alias. The witnesses were certain of this because "Joan Bennett" was the one with whom both ladies principally conversed during the transactions. On the strength of this sure testimony, and finding no prejudice, the trial court permitted amendment of the indictment.

Pennsylvania, like most jurisdictions, has a statute which governs when an indictment may be amended at trial.[3] The portion of the act upon which appellant relies, by negative implication, provides that, "it shall and may be lawful for the court before whom the trial shall be had, if it shall consider such variance [between the proof at trial and the allegations in the indictment] not material to the merits of the case, and that the defendant cannot be prejudiced thereby in his defense upon such merits, to order such indictment to be amended, according to the proof ...." With respect to the question of when an indictment may be amended, our Supreme Court recently stated in *Commonwealth v. Pope*, 455 Pa. 384, 391 (1974): "It is well settled that a purported variance will not be deemed fatal unless it could mislead the defendant at trial, involves an element of surprise prejudicial to the defendant's efforts to prepare his defense, precludes the defendant from anticipating the prosecution's proof, or impairs a substantial right." [Citations omitted.]

---

2. The investigating officer, Frank Tavern, also testified that there was much confusion concerning which women used which alias when he prepared the complaint.

3. Act of March 31, 1860, P.L. 427, §13, 19 P.S. §433 (1964).

While the appellate courts of Pennsylvania have not previously treated the precise question here involved, in similar cases we have sustained the lower court's permitting the Commonwealth to amend the indictment. For example, in *Commonwealth v. Lawton*, 170 Pa. Superior Ct. 9 (1951), we sustained an amendment in a common law extortion case where the indictment misstated appellant's job title, even though proof that appellant was a public official was an element of the crime. In addition, on at least two occasions our lower courts have permitted amendments to correctly state the defendant's alias. See *Commonwealth v. Wilson*, 23 D. & C. 93 (Pa. C.P. 1935); *Commonwealth v. Denlinger*, 16 Lanc. L. Rev. 27 (Pa. C.P. 1898). Furthermore, numerous other jurisdictions permit amendments to correct aliases. See, e.g., *Brookhart v. Haskins*, 205 N.E.2d 911 (Ohio, 1965), rev'd on other grounds *sub nom. Brookhart v. Janis*, 384 U.S. 1 (1966); *Kellum v. State*, 57 So.2d 316 (Miss. 1952); *Graves v. State*, 114 So. 123 (Miss. 1927). On the other hand, we have found no case in which such an amendment was deemed erroneous. Hence, the weight of authority demonstrates that the name of an alias is merely supplied in the indictment to facilitate pleading and, as such, is immaterial. *Commonwealth v. Liebowitz*, 143 Pa. Superior Ct. 75 (1941).

In addition, there is not the slightest hint that this amendment surprised appellant or prejudiced her defense. *Commonwealth v. Pope*, supra. At the suppression hearing attended by appellant's counsel, one month before appellant's trial, both bank tellers testified that appellant cashed the checks using the alias "Joan Bennett," not "Jeannie Moffatt." Hence, their testimony at trial, while at variance with the averment in the indictment, was consistent with the testimony which they had recently given at the suppression hearing. In any event, if the amendment would have had some effect on appellant's defense, a motion for a continuance would have been the appropriate remedy. *Commonwealth v. Streets*, 113 Pa. Superior Ct. 65 (1934).

Appellant next contends that her in-court identification by the bank tellers should not have been permitted because it was tainted by an illegal, extrajudicial confrontation. For a variety of reasons we disagree.

The extrajudicial confrontation in question occurred when the bank tellers were summoned by an official of Mellon Bank to meet him at the Allegheny County Courthouse. An employee of Mellon Bank drove the ladies to the courthouse, but never disclosed, if indeed he knew, the purpose of the meeting. After they arrived at the courthouse, and while they were looking for the Mellon Bank officer, the ladies saw appellant standing, unrestrained, in the corridor. Both ladies immediately recognized appellant. In a subsequent conversation with the bank officer, the ladies informed him that they had recognized appellant as the woman who had posed as Joan Bennett. At no time during this rendezvous did the women speak to any officer or investigator for the Commonwealth. Without a doubt, the confrontation was not wholly fortuitous; but, there is no direct evidence implicating the Commonwealth in its arrangement. Mellon Bank had been the favorite target of appellant and her sister, and appellant was apparently awaiting trial for other forgeries when she was identified in the courthouse. Mellon Bank, of course, knew of the trials and could have readily arranged the confrontation without the aid of the Commonwealth. In any event, because we find that there was little evidence that this confrontation was either unduly suggestive or prejudicial in the least, we need not reach the question of whether the Commonwealth had any burden of offering positive evidence that it was not involved in arranging the courthouse viewing.[4]

---

4. Similarly, we need not determine whether an in-court identification may be barred, because of an unduly suggestive out-of-court identification procedure, even when the Commonwealth had nothing to do with arranging the prejudicial confrontation.

First, both witnesses testified at the suppression hearing and at trial that their opportunity to observe appellant during the commission of the crimes was excellent. In both cases the transactions took more than five minutes to complete, during the daytime, in a well-lighted bank. The suppression-hearing judge expressly found that, even if the confrontation had been unduly suggestive, there was more than enough evidence to support the conclusion that an independent basis for an in-court identification existed. *Neil v. Biggers*, 409 U.S. 188 (1972); *Stovall v. Denno*, 388 U.S. 293 (1967); *Commonwealth v. Whiting*, 439 Pa. 205 (1970). See also *Commonwealth v. Jenkins*, 232 Pa. Superior Ct. 523, 335 A.2d 463 (1975); *Commonwealth v. Temple*, 232 Pa. Superior Ct. 453, 335 A.2d 805 (1975).

Second, the witnesses' testimony demonstrates that the confrontation was not unduly suggestive. The bank tellers went to the courthouse to meet with an official of Mellon Bank; and, although they presumed that the meeting had something to do with the forgeries, they were never told to look for anyone in particular other than the bank official. From among all the people whom the tellers saw in the courthouse, they immediately and simultaneously recognized appellant, despite the fact that she was not called to their attention. We do not find that this admittedly unusual kind of identification procedure violates the standards set forth in *Stovall v. Denno*, supra, and *Neil v. Biggers*, supra. Hence, based upon the totality of the circumstances, we conclude that the identification procedure employed here was not so unnecessarily suggestive and conducive to irreparable mistaken identification that appellant was denied due process of law.[5]

---

5. Appellant also argues that the court improperly admitted hearsay evidence during the trial when it permitted a police officer to read a notation concerning appellant's weight at the time of her arrest from the back of a police photograph of her. First, no timely objection was made at trial to the testimony, so the issue is waived. See, e.g.,

For the foregoing reasons, the judgments of sentence are affirmed.

---

*Commonwealth v. Anderson,* 464 Pa. 541, 347 A.2d 674 (1975). Second, appellant testified that she had provided the information concerning her weight to the police at the jail, so that any error in admitting the hearsay evidence was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18 (1967).