DOLSON *v.* CENTRAL BUSINESS MEN'S ASS'N.

1. EVIDENCE—OPINION AS TO MENTAL COMPETENCY PROPERLY AD-
MITTED WHERE FACTS RELATED.

Where witness had always known plaintiff, and was
thereby enabled to compare him with his former self, and
related facts on which his opinion was based, it was proper
to allow him to express an opinion as to plaintiff's mental
competency to sign a release of his claim under a sick
and accident policy.[1]

2. INSURANCE—EVIDENCE—REBUTTAL.

In an action on a sick and accident policy, where in-
sured claimed that at the time he signed a release of
his claim insurer's denial of liability was not made in
good faith but was made for the purpose of obtaining
a favorable settlement, questions propounded by it to its
investigator as to the investigation he made and what
he learned therefrom were admissible for the purpose of
rebutting insured's claim of bad faith, but not for the
purpose of establishing the truth of the facts which they
elicited.[2]

3. TRIAL—INSTRUCTIONS AS TO PURPOSE OF TESTIMONY COMPETENT
FOR ONE PURPOSE AND NOT FOR ANOTHER.

Where testimony is, competent for one purpose and not
for another, the court should always instruct the jury for
what purpose it is competent, and that they should use
it only for that purpose and for no other.[3]

4. INSURANCE—COMPROMISE AND SETTLEMENT—FRAUD—TRIAL.

Where there was no evidence that insurer made any false
representations, or even acted in bad faith in denying
liability and in effecting a compromise settlement with
insured of his claim under a sick and accident policy, it
was reversible error for the trial court to submit to the
jury the question of insurer's fraud.[4]

5. SAME—DENIAL OF LIABILITY No EVIDENCE OF FRAUD.

The mere fact that the insurer denied liability and sug-

[1]Evidence, 22 C. J. § 696; [2]Accident Insurance, 1 C. J. § 328
(Anno); [3]Trial, 38 Cyc. p. 1756; [4]Accident Insurance, 1 C. J.
§ 342; Appeal and Error, 4 C. J. § 3016; Trial, 38 Cyc. p. 1618.

gested defenses without merit in its negotiations for a compromise settlement is not evidence of fraud.[5]

Error to Eaton; McPeek (Russell R.), J. Submitted January 13, 1926. (Docket No. 158.) Decided June 7, 1926.

Assumpsit by John L. Dolson against the Central Business Men's Association on a policy of insurance. Judgment for plaintiff. Defendant brings error. Reversed.

*Peters & Marshall,* for appellant.

*C. B. Fisk Bangs,* for appellee.

BIRD, C. J. Plaintiff is a dentist by profession. Defendant is a sick and accident association of Chicago. Plaintiff held a policy in defendant company. In May, 1921, plaintiff became ill. His malady was diagnosed as septicemia of the teeth. Upon advice he had them all extracted. This, however, did not relieve him. He continued to be excessively nervous. He abandoned his practice and returned to his old home in Charlotte. He there made an effort to learn telegraphy, but failed in that. He made claim under his policy for a benefit under the partial incapacity clause. Defendant investigated plaintiff's claim, and finally sent its adjuster, Mr. Hislop, to Charlotte to make settlement with plaintiff. He found plaintiff at the Postal Telegraph office, where he was attempting to learn telegraphy. At that time plaintiff, under the partial disability clause of his policy, was entitled to be paid for 16 weeks at $10 a week. Mr. Hislop explained to him that the company doubted its liability because it appeared as though his trouble proceeded from pyorrhea, which was of long standing, but Mr. Hislop explained that he was there

---

[5]Accident Insurance, 1 C. J. § 209 (Anno).

235—Mich.—6.

to settle the whole matter, and that he would pay him $200 in full settlement of the policy.    Plaintiff accepted that amount and signed the following receipt:

"Release.    Received of the Central Business Men's Association of Chicago, Illinois, the sum of two hundred and no/100 dollars ($200.00) in full compromise, satisfaction, release and discharge of all claims I myself, my heirs, administrators or assigns now have or may hereafter have against said Central Business Men's Association under its policy of insurance No. 402862 (issued to me) for or on account of disabilities sustained by me beginning on or about May 19, 1921, and for any past, present or future loss or disabilities on account of any and all illness, disease or injuries sustained or received by me up to this date."

A receipt was also indorsed on the back of the check which plaintiff signed.    About two years later the $200 which he received, with interest, was tendered back and this suit begun.    Plaintiff claimed $10 a week for all the weeks that intervened from the day he became ill until the day of trial.    It was plaintiff's claim that when he signed the settlement receipt he was not mentally competent to transact business of that character, and that he did not read the receipt. On the further ground that he was defrauded by the representations of the company.    These issues were submitted to the jury and they found a verdict for plaintiff of $1,000.

1. Defendant complains because the witness, Blaiser, was permitted to give his opinion of plaintiff's competency without reciting any acts, conduct or appearance which led him to doubt it.    Mr. Blaiser testified that he had always known the plaintiff; that he came and requested him to teach him telegraphy; that he consented, but he was in such a physical and mental condition he did not succeed.    He further stated that plaintiff could not carry on a connected conversation;

that at times he had the look of a child—rather a blank look.  When asked to do something he would giggle and disregard the request.  He was unsteady in his work and gait, and so nervous he could not keep his hand on the telegraph keys.  Also stated that plaintiff was easily influenced, and gave an illustration of it.  In view of these facts and the fact that Mr. Blaiser had always known him, and was thereby enabled to compare him with his former self, we think he related enough to entitle him to give his opinion of his mental competency to transact the particular business in hand.

2. It was the contention of plaintiff that defendant's claim of "no liability" was not made in good faith, that it was merely a subterfuge to get a favorable settlement.  To rebut this and to show that defendant acted in good faith counsel asked the witness Hislop, who investigated the claim, the following questions:

"*Q.* Did you find out whether or not this man had been employed?

"*Q.* And from that investigation did you learn, and did you know at the time you came here, as to when he left his business in Randolph?

"*Q.* From your investigation did you learn whether plaintiff's illness antedated May 19, 1921?"

These questions were objected to as hearsay and rejected.  Defendant stated to the court that the questions were propounded not for the purpose of showing what was learned was true but for the purpose of rebutting the claim of bad faith of defendant in making its defense.  We think these questions were competent for that purpose.  10 R. C. L. p. 959; *Blodgett v. Park,* 76 N. H. 437 (84 Atl. 42, Ann. Cas. 1913B, 853); *Mills v. Riggle,* 83 Kan. 703 (112 Pac. 617, Ann. Cas. 1912A, 616).  Of course, the replies to these questions could not be used to establish the truth of the facts which they elicited.  The replies were com-

petent only for the purpose of rebutting the claim of plaintiff that defendant was not making a defense in good faith.     Where testimony is competent for one purpose and not for another, the court should always instruct the jury for what purpose it is competent, and that they should use it only for that purpose and for no other.

3. Defendant's counsel requested the court to charge the jury that there was no testimony showing fraud in the settlement agreement.     The trial court refused this and submitted the question to the jury.     This is complained of as serious error.     When the compromise settlement was made no one was present save Mr. Hislop, who acted for the company, and Mr. Blaiser, and plaintiff.     We have given the testimony of these witnesses close scrutiny, but we are unable to find any testimony competent to submit to the jury on that question.     It was the ordinary settlement where insurer and insured disagree, except that there was less controversy than usual.     There was no evidence of coercion, there were no representations made which were shown to be false.     There was no testimony that plaintiff relied on any particular false representation in making the settlement.     There was no testimony that any false representations were made.     Neither do we think there was evidence that there was bad faith in making the claim it did.     The mere fact that the company denied liability and suggested defenses without merit in its negotiations for a compromise settlement is not evidence of fraud. *Mayhew* v. *Insurance Co.,* 23 Mich. 105.     The submission of the question of fraud was very detrimental to defendant's case and was reversible error.

The judgment must be reversed and a new trial granted, with costs to defendant.

SHARPE, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.