426 A.2d 702

Doris BACHMAN, Appellant,

v.

Ruth ARTINGER, t/a Crafton Kennels.

Superior Court of Pennsylvania.

Argued Nov. 15, 1979.

Filed Feb. 27, 1981.

58

Michael A. Della Vecchia, Pittsburgh, for appellant.

John G. Kish, Pittsburgh, for appellee.

Before PRICE, HESTER and CAVANAUGH, JJ.

PRICE, Judge:

█ In accordance with the adage that "every dog has its day," we are called upon in this appeal to resolve a dispute concerning man's best friend. On April 20, 1976, appellant, Doris Bachman, purchased a miniature schnauzer puppy from appellee, Ruth Artinger, trading as Crafton Kennels. The purchase price was $165.00. On April 19, 1977 appellant commenced the instant action in trespass, alleging that appellee had fraudulently misrepresented that the puppy was in good physical health at the time of the sale and also that the puppy was a pedigreed dog registrable with the American Kennel Club.[1] Appellant demanded punitive damages based upon the alleged misrepresentations.

A board of arbitrators awarded appellant $1,000, which award was appealed. The case was subsequently tried do novo in the court of common pleas on July 7, 1978. The trial judge, sitting without a jury, rendered a verdict for appellee on July 10, 1978. On December 28, 1978, appellant's timely exceptions were dismissed by the court below, sitting en banc, and judgment was entered on January 3, 1979. This appeal ensued. Appellant now contends that the verdict was against the weight of the evidence and assigns error to several evidentiary rulings by the trial court. Finding these contentions meritless, we affirm the judgment entered below.

█ Appellant first maintains that she is entitled to a new trial because the findings of the trial judge were against the weight of the evidence. It is well established in this Commonwealth that the findings of fact of a trial judge, sitting without a jury, if approved by the court en banc, have the force and effect of a jury verdict and, if based upon sufficient evidence, will not be disturbed on appeal unless they

---

1. Despite appellant's assertions to the contrary, this case is not "a simple matter of breach of contract." Brief for Appellant at 15. Appellant's complaint averred only a cause of action in trespass, *viz.*, fraudulent misrepresentation. Accordingly, appellant's failure to join causes of action in trespass and assumpsit together in the same complaint constitutes a waiver of the cause of action not pleaded. *See* Pa. R.C.P. 1020(d)(1), (4); *Spinelli v. Maxwell*, 430 Pa. 478, 243 A.2d 425 (1968).

are manifestly erroneous. *See, e. g., Penneys v. Pennsylvania Railroad Co.,* 408 Pa. 276, 183 A.2d 544 (1962); *Denby v. North Side Carpet Cleaning Co.,* 257 Pa.Super. 73, 390 A.2d 252 (1978); *Floravit v. Kronenwetter,* 255 Pa.Super. 581, 389 A.2d 130 (1978). This rule has particular application to those findings which are predicated upon the credibility of witnesses and the weight accorded to their testimony since the trial judge has the unique opportunity to observe the witnesses' demeanor and to assess their credibility. *See Claughton v. Bear Stearns & Co.,* 397 Pa. 480, 156 A.2d 314 (1959); *Liebowitz v. Ortho Pharmaceutical Corporation,* 224 Pa.Super. 418, 307 A.2d 449 (1973); *Jones v. Steinberg,* 178 Pa.Super. 517, 115 A.2d 803 (1955). Furthermore, in such a case "the party favored by the finding is entitled to have the evidence viewed in the light most favorable to him and to have all conflicts in the testimony resolved in his favor." *Courts v. Campbell,* 245 Pa.Super. 326, 331, 369 A.2d 425, 428 (1976), *quoting Darlington Brick and Clay Products, Inc. v. Aino,* 225 Pa.Super. 186, 187, 310 A.2d 401, 402 (1973).

■ Applying these principles in the instant case, we perceive no reason to disturb the verdict rendered below. The trial judge concluded that the puppy sold by appellee to appellant was healthy at the time of sale and, furthermore, that the dog was, and continues to be, registrable with the American Kennel Club. The record amply supports these conclusions. Although appellant testified that after she received the puppy it vomited and cried at night, appellee testified that on the date of the sale, April 20, 1976, the puppy was "in normal good health, [and] had no problems." (N.T. 69). Appellee, who operates a kennel and, presumably, was familiar with canine behavior, further explained that the symptoms displayed by the puppy shortly after its delivery to appellant were not unusual in puppies that have undergone a change of environment. Both the trial judge and the court en banc accepted appellee's explanation of the puppy's behavior and found that the dog's health problems commenced after the sale and delivery of the animal.

Similarly, there was sufficient evidence to sustain the finding that the puppy was registrable with the American

Kennel Club. The dispute over the puppy's registrability arose due to misinformation concerning the puppy's sire. Appellee testified that when she purchased the puppy from the breeder, she was given pedigree information indicating that the puppy's dam was one Raffaele Cher Delite and that the puppy's sire was one Champion Miown Tramp Shining. Appellee provided this same information to appellant at the time of sale. However, appellee subsequently learned from the breeder in January, 1977, that the puppy's sire was actually one It's High Time Great Gatsby and that Champion Miown Tramp Shining was, in fact, the sire of the puppy's dam. Having learned of the mistake in the information she had given appellant, appellee attempted to correct the error by furnishing appellant with the requisite American Kennel Club registration application naming the correct sire and dam and listing other information necessary to register the puppy.[2]

At the close of trial, the trial judge posed the following question regarding the registration application naming It's High Time Great Gatsby, a registered schnauzer, as the sire of the puppy in question:

> Is there anybody here prepared to tell me whether, if [appellant] completes this form and mails it to the American Kennel Club with the proposed $4 and $1 for each supplemental transfer, as I read it, if she completes this and signs it, puts in the first and second choice of names, and signs it and sends it off to the AKC with a check for $5, whether she will or will not have a registered miniature schnauzer. (N.T. 92).

Following a lengthy colloquy, appellant's own expert acknowledged that the American Kennel Club would register the puppy if appellant simply completed the application form and mailed it with the registration fee. (N.T. 91–99). Relying upon the expert's concession, the trial court concluded that the puppy was registrable. Slip op. at 4. As there

2. The record discloses that when appellee went to appellant's apartment to deliver the registration application naming the correct sire, appellant refused to accept the application. A copy of the application was, however, given to appellant's counsel. *See* N.T. 74–75.

was sufficient evidence to support that conclusion, we are not permitted to make a finding of fact to the contrary. *Lawner v. Engelbach*, 433 Pa. 311, 249 A.2d 295 (1969); *Courts v. Campbell*, 245 Pa.Super. 326, 369 A.2d 425.

██ Appellant next contends that the trial court erred in allowing appellee to testify, over objection, to an out of court statement made to her by the puppy's breeder indicating that the puppy's sire was Champion Miown Tramp Shining.[3] Appellant argues that this testimony was hearsay and, therefore, inadmissible. We do not agree. "Testimony as to an out of court statement, written or oral, is not hearsay if offered to prove, not that the content of the statement was true, but that the statement was made." *Commonwealth v. Samuels*, 235 Pa.Super. 192, 204, 340 A.2d 880, 886 (1975). *See also Commonwealth v. Sampson*, 454 Pa. 215, 311 A.2d 624 (1973); *Commonwealth v. DiSilvio*, 232 Pa.Super. 386, 335 A.2d 785 (1975); *Wagner v. Wagner*, 158 Pa.Super. 93, 43 A.2d 912 (1945); 6 Wigmore, Evidence § 1789 (Chadbourn rev. 1976). Furthermore, when the question is "whether a person acted in good faith and with reasonable cause, the information on which he acted is competent evidence even though it consists of declarations made by third persons, and regardless of whether such declarations were in fact true or false." Henry, Pennsylvania Evidence § 441 (4th ed. 1953). *See generally Commonwealth v. Wright*, 455 Pa. 480, 317 A.2d 271 (1974).[4]

██ Instantly, it cannot be disputed that appellee's good faith was in issue. Appellant claimed that appellee *fraudu-*

3. The puppy's breeder furnished this information to appellee when appellee purchased the puppy.

4. Professor McCormick states the principle thus:
   When it is proved that D made a statement to X, with the purpose of showing, circumstantially, the probable state of mind of X, such as notice, knowledge, or motive, or to show the information which X had as bearing on the reasonableness or good faith of the subsequent conduct of X, the evidence is not subject to attack as hearsay.
   C. McCormick, Law of Evidence § 228 (1st ed. 1954) (footnotes omitted). *Cf. United States v. Press*, 336 F.2d 1003 (2d Cir. 1964), *cert. denied*, 379 U.S. 965, 85 S.Ct. 658, 13 L.Ed.2d 559 (1965) (mail

*lently* misrepresented the puppy's registrability. In this Commonwealth, a false representation is fraudulent only when it is shown by clear and convincing evidence to have been made knowingly with the intent to deceive or in reckless ignorance of the truth or falsity of the matter. *Brentwater Homes, Inc. v. Weibley*, 471 Pa. 17, 369 A.2d 1172 (1977); *Thomas v. Seaman*, 451 Pa. 347, 304 A.2d 134 (1973); *Baker v. Rangos*, 229 Pa.Super. 333, 324 A.2d 498 (1974); *Shane v. Hoffmann*, 227 Pa.Super. 176, 324 A.2d 532 (1974). The purpose for which the alleged hearsay statement was offered in the instant case was not to prove the truth of the matter asserted therein, *i. e.*, that Champion Miown Tramp Shining was the puppy's sire. Rather, the statement was introduced to show that it was, in fact, made by the breeder to appellee and that appellee relied upon that information in good faith when she subsequently misinformed appellant that the dog's sire was Champion Miown Tramp Shining. In short, the statement was presented to demonstrate that appellee lacked the intent necessary for a finding of actual fraud. As such, the statement was not hearsay and was, therefore, properly admitted.

Appellant finally contends that the trial court erred in disregarding the testimony of veterinarian Dr. Ronald Glotfelty concerning the puppy's physical health on the date of sale. Dr. Glotfelty testified that he first examined the puppy in question on November 22, 1976, over seven months after appellee delivered the dog to appellant. His examina-

fraud; complaints admissible on issue of defendant's intent and good faith); *State v. Sparacino*, 164 La. 704, 114 So. 601 (1927) (bigamy; defendant's honest belief that first wife had obtained a divorce being an issue, information given to him by various third persons admissible to evidence that belief); *Dolson v. Central Business Men's Assn.*, 235 Mich. 80, 209 N.W. 95 (1926) (release given after dispute of liability; inquiries and information obtained admitted to show insurer's good faith); *Apton v. Barclays Bank Ltd.*, 276 App.Div. 910, 94 N.Y.S.2d 1 (1950), *aff'd* 301 N.Y. 601, 93 N.E.2d 495 (1950) (information given bank admitted on question of bank's good faith in transferring funds); *State v. Bixby*, 27 Wash.2d 144, 177 P.2d 689 (1947) (evidence admitted on issue of defendant's good faith and belief in prosecution for subornation of perjury).

tion disclosed that the puppy was suffering from a skin irritation *on November 22, 1976.* Dr. Glotfelty described the treatment administered to remedy the skin condition and was then asked the following question:

Q. Based on the history you received, your examination and diagnosis of the dog, and your treatment of the dog, can you tell us *with a reasonable degree of veterinary medical certainty* whether or not the dog had the condition in April of 1976?

A. It is possible. (N.T. 39) (emphasis added).

Appellant offered no other veterinary testimony concerning the puppy's physical condition on the date of delivery or during the interim between delivery and the November 22, 1976 examination by Dr. Glotfelty.

■ The trial court concluded that Dr. Glotfelty's testimony was not probative of the puppy's state of health on April 20, 1976. (N.T. 89). We agree. Dr. Glotfelty's statement that it was "possible" that the puppy had the skin condition on the date of sale was woefully indefinite as an expression of expert opinion. *See Commonwealth v. Hughes,* 480 Pa. 311, 389 A.2d 1081 (1978); *Houston v. Canon Bowl, Inc.,* 443 Pa. 383, 278 A.2d 908 (1971); *Warden v. Lyons Transportation Lines, Inc.,* 432 Pa. 495, 248 A.2d 313 (1968); *Vorbnoff v. Mesta Machine Co.,* 286 Pa. 199, 133 A. 256 (1926); *Albert v. Alter,* 252 Pa.Super. 203, 381 A.2d 459 (1977).

The issue is not merely one of semantics. There is a logical reason for the rule. The opinion of a medical expert is evidence. If the fact finder chooses to believe it, he can find as fact what the expert gave as an opinion. For a fact finder to award damages for a particular condition to a plaintiff, it must find as a fact that that condition was legally caused by the defendant's conduct. *Here, the only evidence offered was that it was "probably" caused, and that is not enough.* Perhaps in the world of medicine nothing is absolutely certain. Nevertheless, doctors must make decisions in their own profession every day based on their own expert opinions. *Physicians must understand that it is the intent of our law that if the plaintiff's medical expert cannot form an opinion with*

*sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment.*

*McMahon v. Young*, 442 Pa. 484, 486, 276 A.2d 534, 535 (1971) (emphasis added).

Because the veterinarian was unable to express a positive opinion of the puppy's physical condition on the date of delivery, April 20, 1976, the trial court properly disregarded his testimony.[5]

The judgment is affirmed.

5. Appellant argues that a veterinarian need not testify with the same exactitude and certainty required of a physician expressing an opinion on matters of medical causation. To support this argument appellant refers us to the unremarkable fact that "animals cannot talk," Brief for Appellant at 14, and, therefore, contends that a veterinarian must rely upon information supplied by an animal's owner to formulate a diagnosis. Appellant's argument begs the question, however, for we fail to perceive how the *source* of the information supplied to a veterinarian has any bearing on his or her ability to form an opinion with sufficient certainty. Rather, it is more likely that the *amount* and *quality* of the information given to the veterinarian would affect the certainty of any opinion expressed.