388

433 A.2d 505

COMMONWEALTH of Pennsylvania

v.

John WILLIAMS, a/k/a Benjamin Williams, Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 5, 1980.

Filed Aug. 7, 1981.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Kenneth S. Gallant, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, JOHNSON and POPOVICH, JJ.

JOHNSON, Judge:

After a jury trial, Appellant was convicted of Rape[1] and Criminal Conspiracy.[2] This is an appeal from the judgment of sentence.

Appellant raises two issues on appeal. First, he contends that the court erred in excluding the proffered expert testimony of a psychologist who would have testified concerning hysterical transposition.[3] Second, Appellant argues that the court erred in refusing to give a second instruction to the jury that the expert testimony had not been presented because of the court's ruling. We find that Appellant's arguments are without merit, and, accordingly, affirm.

1. 18 Pa.C.S.A. § 3121.

2. *Id.,* § 903.

3. Hysterical transposition is a phenomenon in which, under certain conditions, a victim transposes the face of the culprit onto the face of an innocent bystander. In these cases, the victim saw the bystander either immediately before or immediately after the trauma. This transposition results in a mental transfer of the culprit's deeds to the innocent bystander. (Offer of Defense Counsel) N.T. 167–168.

The complainant testified that Appellant first held her on the ground while two companions raped her and then raped her himself. Appellant, denying these allegations, testified that he first saw the complainant, who was disheveled and extremely upset, near the scene of the crime. He subsequently took the complainant to his sister's house to obtain clothing.

Defense counsel offered the psychologist's testimony to inform the jury that the conditions for the occurrence of hysterical transposition existed in the instant case. The psychologist had not examined the victim and would not have testified that the victim actually, or even probably, did confuse Appellant's face with the deeds of one of the rapists.

In *Houston v. Canon Bowl, Inc.*, 443 Pa. 383, 278 A.2d 908 (1971), the plaintiff offered the testimony of a consulting engineer concerning factors that can create a nonuniform or sticky floor in a bowling alley. The expert could not testify that plaintiff's fall actually occurred because of these factors. The Supreme Court of Pennsylvania affirmed the lower court's refusal to admit the proffered expert testimony.

The court in *Houston* discussed three reasons why it affirmed the trial court. First, an expert witness can testify concerning the cause of an accident only if he either personally observed the scene of the accident or answers hypothetical questions based upon " 'such facts as the jury would be warranted in finding from the evidence.' " Id., 443 Pa. at 385, 278 A.2d at 910 (quoting *Battistone v. Benedetti*, 385 Pa. 163, 170, 122 A.2d 536 [1956]). Second, an expert witness must testify "not that the injury in question might have been or even probably was caused by the alleged negligence, but that . . . in his professional opinion the result in question came from the cause alleged." Id., 443 Pa. at 386, 278 A.2d at 910. Third, "the allowance of testimony by an expert witness is a matter within the sound discretion of the trial court." Id., 443 Pa. at 386, 278 A.2d at 910.

■ In the instant case, the psychologist had not examined the complainant. He would, however, have testified that the preconditions for the occurrence of hysterical transposition existed in the facts of a hypothetical question which was based on testimony regarding the incident, the complainant's behavior and state of mind, and Appellant's testimony concerning his encounter with the complainant (Appellant's brief, p. 6). In the instant case, the complainant's state of mind does not constitute a "fact" which the jury would find from the evidence. Since the psychologist had not examined the complainant, and since no other evidence was introduced concerning the complainant's state of mind at the time of the rape, the hypothetical questions, which the psychologist would have answered, would not have been based upon facts from the evidence in the instant case.

Second, the psychologist would not have testified that hysterical transposition actually, or even probably, occurred in the instant case. Under the second rationale given by the court in *Houston*, the psychologist's testimony would not have been admissible. If his testimony were to be admissible under the second criterion of *Houston*, the psychologist must have been able to testify that, in his professional opinion, hysterical transposition actually occurred in the instant case. Since the psychologist could not testify that hysterical transposition caused the complainant to confuse Appellant with one of the rapists, the testimony lacks probative value.

In *Bachman v. Artinger*, 285 Pa.Super.Ct. 57, 426 A.2d 702 (1981), the Superior Court affirmed the trial court's refusal to admit a veterinarian's testimony that it was "possible" that the puppy had a skin condition on the date of sale. The Superior Court held that such testimony was "woefully indefinite as an expression of expert opinion." Id., 285 Pa.Super. at 65, 426 A.2d at 706. The court stated:

The opinion of a medical expert is evidence. If the fact finder chooses to believe it, he can find as fact what the expert gave as an opinion. For a fact finder to award damages for a particular condition to a plaintiff, it must

find as a fact that the condition was legally caused by the defendant's conduct. *Here, the only evidence offered was that it was "probably" caused, and that is not enough.* Perhaps in the world of medicine nothing is absolutely certain. Nevertheless, doctors must make decisions in their own profession every day based on their own expert opinions. *Physicians must understand that it is the intent of our law that if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment.*

Id., 285 Pa.Super. at 65–66, 426 A.2d at 707 (citing *McMahon v. Young,* 442 Pa. 484, 486, 276 A.2d 534, 535 [1971]). Likewise, in *Commonwealth v. Hughes,* 480 Pa. 311, 389 A.2d 1081 (1978), the Supreme Court affirmed the trial court's instruction to the jury to disregard the testimony of a psychiatrist who did not testify that, in his opinion, the defendant did not know his conduct was right or wrong. Because the psychiatrist would have testified only that the defendant *could have* a disease that prevented him from distinguishing between right and wrong, the evidence was properly stricken. Id., 480 Pa. at 317, 389 A.2d at 1084.

In light of these cases, the trial judge did not abuse his discretion in refusing to admit the expert testimony in the instant case.

We proceed to consider Appellant's second issue—that the judge erred in refusing to instruct the jury a second time concerning why the psychologist did not testify.

In his opening remarks, defense counsel had said that the psychologist would testify concerning hysterical transposition. Although the judge subsequently rejected counsel's offer of proof, he gave the following instructions to the jury:

THE COURT: Ladies and gentlemen, in the opening remarks there was a reference by [defense counsel] to a doctor who he intended to call.

I want you to completely disregard those comments of [defense counsel]. As I told you when you were first empaneled, evidence comes from the witness stand and the comments of the lawyers are not evidence, nor must you draw any inferences from the fact that that witness is not called here. (N.T. 336–337)

In his closing arguments, the Assistant District Attorney made the following comment:

Well, you heard testimony—strike that, my error. It is a big error. You heard [defense counsel's] opening in which he said he was going to call some psychologist to say something. Ladies and gentlemen,—(Id., 347–348).

Defense counsel immediately objected. After the court sustained counsel's objection, the Assistant District Attorney remarked:

The only evidence you have, ladies and gentlemen, is evidence from that witness stand and that is all, and you had character witnesses in this case, ladies and gentlemen, and [defense counsel] was quite correct in citing you the charge of the Court that character evidence may, if you choose, in and of itself, raise an issue of reasonable doubt. (Id., 348)

Because of the prosecution's comments during closing argument, on the following day, defense counsel requested a second instruction to the jury regarding why the psychologist did not testify. The court denied this request.

█ The effect of remarks, such as the foregoing comments of the District Attorney, is to be ascertained by the trial judge. *Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975). Likewise, the remedy to be applied in each case is within the discretion of the trial judge. Id., 462 Pa. at 61, 337 A.2d at 882; *Commonwealth v. Silvis*, 445 Pa. 235, 237, 284 A.2d 740, 741 (1971).

█ In the instant case, the judge had previously instructed the jury not to draw any inference from defense counsel's failure to call the psychologist. This instruction had already cautioned the jury to disregard comments like those of the

prosecutor in his closing argument. The refusal to charge the jury a second time concerning the same subject was within the court's discretion. *Commonwealth v. Lowery*, 276 Pa.Super.Ct. 569, 419 A.2d 604, 611 (1980).

Since a review of the record reveals that the trial judge did not abuse his discretion, we affirm the judgment of sentence.

BROSKY, J., files a concurring opinion

POPOVICH, J., concurs in the result.

BROSKY, Judge, concurring:

I concur in the result reached by the majority, but would affirm the order for reasons other than those advanced in the majority opinion. I believe that the proffered testimony was rightly excluded because it lacked sufficient probative value.

I do not agree with the majority's conclusion that this testimony should be excluded on the grounds that it deals with a subject within the experience of the jurors or that it might be confusing to them. Nor do I believe that consideration of testimony concerning this phenomenon would invite the jury to relinquish to the expert its responsibility to determine credibility.

As the majority notes, the theory of hysterical transposition is not one with which the jurors are likely to be familiar. The proffered testimony would have explained this theory, not merely the effects of stress on perception as was the case in *U. S. v. Amaral*, 488 F.2d 1148 (9th Cir. 1973).

It may be as the majority states, that, "Scientific or expert testimony is especially likely to mislead the jury because of its aura of special reliability and trustworthiness." However, such a general observation has not prevented the courts from permitting the use of very complicated expert testimony. There is no indication that the proffered testimony would have been confusing. I would add that the *Amaral* opinion cited by the majority did not

include an analysis of the claim that the proffered testimony would confuse the jury.

It is the function of the jury to determine the credibility of witnesses. *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976). However, expert testimony is permitted as an aid to the jury when the subject matter is distinctly related to a science, skill or occupation beyond the experience of the average layman. Id., 466 Pa. at 229, 352 A.2d at 32. Unlike *O'Searo*, the proffered testimony in the present case concerned such subject matter. In *O'Searo*, the proffered testimony served only to corroborate the defendant's story.

However, the appellant offered the testimony of the psychologist to prove only that the conditions under which hysterical transposition occur were present in this case. He was not prepared to testify that it was his opinion that the victim in the case had actually experienced this psychological phenomenon.

In *Commonwealth v. Hughes*, 480 Pa. 311, 389 A.2d 1081 (1978), a defendant sought to introduce the testimony of a psychiatrist to suggest to the jury that the defendant suffered from a mental disorder. In response to the query, "Did you form the opinion that the defendant suffered from a mental disorder?" The doctor replied, "I have no opinion. All I am trying to relate here is that it could have happened, not that I have an opinion whether it did or not." The court concluded that "As the psychiatrist was unable to give any opinion of appellant's sanity or insanity at the time of the offense, his testimony was properly stricken." Id., 480 Pa. at 317, 389 A.2d at 1084.

As the court explained in *Commonwealth v. Hamilton*, 459 Pa. 304, 329 A.2d 212 (1974):

> We have never required expert opinion to rise to the level of absolute certainty; if that were the standard, it would not be opinion, but factual knowledge. What is required is "sufficient certainty so as to make a [medical] judgment."

396

Id., 459 Pa. at 311, 329 A.2d at 215 (citing *McMahon v. Young*, 442 Pa. 484, 276 A.2d at 535 (1971).

Also citing *McMahon,* supra, the *Hughes* court explained that

... [I]t is the intent of our law that if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment.

The proffered testimony in the present appeal, like that in *Hughes,* supra, lacked sufficient certainty to be helpful to the jury.