584 A.2d 1097

**Edward C. HALL, Petitioner,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 19, 1990.

Decided Dec. 28, 1990.

Robert S. Robbins, Philadelphia, for petitioner.

James K. Bradley, Asst. Counsel, with him, Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Before PALLADINO and BYER, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Edward C. Hall (Claimant) seeks review of the order of the Unemployment Compensation Board of Review (Board) which affirmed the referee's denial of benefits pursuant to Section 402(e) of the Unemployment Compensation Law

**58**

(Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).[1] We affirm.

Claimant was employed as a fabric worker for the Defense Logistics Agency (Employer) in Philadelphia for several years until October 5, 1989 when he was discharged. Thereafter, he sought unemployment compensation benefits. The Office of Employment Security (OES) issued a determination denying Claimant benefits on the basis of Section 402(e) of the Law, 43 P.S. § 802(e).

Claimant timely appealed the OES's determination. After a two-day hearing, the referee concluded that Employer sustained its burden of proving willful misconduct under Section 402(e) of the Law, 43 P.S. § 802(e), so as to warrant a disallowance of benefits.[2] The referee based his conclusion on the following findings of fact, which, after reviewing the record, we find supported by substantial evidence:

2.  On July 14, 1989, claimant walked over to a table in the break room where Jonathan Smith and others were seated and said to Mr. Smith, 'I'm going to get you.'

3.  Mr. Smith excused himself from the table, went over to claimant and an argument ensued, during which time claimant took out a knife.

4.  No blows were exchanged and no physical contact was made. Eventually others stopped the argument and Mr. Smith and claimant, Edward Hall, went their separate ways.

5.  Claimant was discharged as a result of the incident.

6.  Claimant did not have good cause for his actions.

Findings of Fact Nos. 2–6.

Claimant appealed the referee's decision to the Board. After reviewing the record, the Board adopted the referee's findings and affirmed his decision.

---

**1.** Section 402(e) of the Law directs in relevant part that an employe shall be ineligible for benefits for any week in which the employe's unemployment is due to his or her discharge from work for willful misconduct connected with that work.

**2.** Employers, of course, bear the burden of proving willful misconduct. *McLean v. Unemployment Compensation Board of Review,* 476 Pa. 617, 383 A.2d 533 (1978).

■ Claimant now seeks our review,[3] presenting the sole issue of whether he was afforded a fair hearing by the referee. Claimant contends that the hearing before the referee was conducted in a manner manifesting bias and violated all concepts of basic fairness. In support, Claimant asserts that the referee exhibited impatience and improperly caused the record to be closed on the first day of hearing in the middle of Claimant's cross-examination of Employer's primary witness because he had other hearings scheduled. Claimant also asserts that the referee committed harmful error when he granted Claimant's request for sequestration of Employer's witnesses, but subsequently permitted Employer's primary witness to be recalled as a rebuttal witness after hearing the testimony of Claimant's only witness.

Relevant to our disposition are the following excerpts extracted from the record:

ACL: My name is Robbins [sic] I was going to represent Mr. Hall [Claimant]. He did not show up?

QR (referee): You are an attorney?

ACL: Yes sir.

QR: No he did not show up. He has a witness here....

. . . .

QR: ... I have got to proceed with the hearing. It was scheduled for ten thirty. It is now quarter to eleven. I have another hearing at eleven o'clock. So I do not want to delay this anymore than I have to....

. . . .

ACL: I would like to make it part of the record Mr. Referee that the inclement weather maybe Mr. Hall is not on time because of that [sic].

3. Our scope of review requires us to affirm the Board's decision unless we find a necessary finding of fact unsupported by substantial competent evidence, an error of law committed, or a violation of the petitioning party's constitutional rights. *Kirkwood v. Unemployment Compensation Board of Review,* 106 Pa.Commonwealth Ct. 92, 525 A.2d 841 (1987).

QR: Inclement weather alright. I see it is slight covering of the sidewalk with snow....

....

QR: ... Now sir do not delay me any longer. I want to proceed with the hearing. You have made your point on the record....

....

ACL: Mr. Referee I move for the sequestration of witnesses.

....

AEL (Employer's counsel): On what grounds ...

ACL: Obvious grounds ... You have got people that are working together that may be in collusion....

Hearing Transcript, pp. 1–2. At this juncture, the referee granted Claimant's request for sequestration of the witnesses intended to be called by Employer, Charles Bowser and Lenora Johnson. *Id.*, p. 2. In accordance therewith, Johnson was sent to a waiting room while Bowser testified. *Id.*, p. 2.

Immediately upon completion of Bowser's direct testimony, which testimony supports Findings of Fact Nos. 2–4, Claimant entered the hearing room, at which time the referee stated:

It is five minutes to eleven. Claimant has just entered the hearing room. And I am sorry but I have another hearing at eleven.... I do not presume that this hearing can be concluded in five minutes. [sic] Since [sic] we have another employer witness and we have the claimant and the claimant's witness.... and I presume there is going to be cross examination.... Perhaps we will allow cross examination and I will close the record for today. And I will reschedule this matter some time in the future. And we will continue the matter at that time.

....

Alright. Any cross examination of Mr. Bowser?

Hearing Transcript, p. 5. Cross-examination of Bowser continued until some time past eleven o'clock when the referee announced that he was going to close the record and proceed with the hearing at a later date. *Id.*, p. 8.

Several weeks later, the hearing was reconvened. In response to the referee's inquiry as to whether Claimant's counsel wished to further cross-examine Bowser, Claimant's counsel responded, "No further cross, Mr. Referee." Hearing Transcript, p. 8.

Thereafter, Employer's second witness, Johnson, was called to testify, at which time the following colloquy transpired:

QR: So there is no other employer witness. So I do not see any reason to sequester anyone at this point.

ACL: Well Mr. Bowser if he is [sic] through I think he ought to be sequestered.

QR: He is through. I do not think there is any reason to sequester him.

ACL: Nobody is going to recall him then fine.

QR: Is he going to be recalled Sir?

AEL: No.

Hearing Transcript, p. 9. Bowser then remained in the hearing room.

Johnson's responses to preliminary questions posed to her revealed that she had not personally witnessed the incident leading to Claimant's discharge, whereupon the following exchange took place:

QR: And I do not see that she can offer any testimony and I see no necessity to cross examine her. So that apparently ends the employer's case [sic] is that right sir?

AEL: Yes.

Hearing Transcript, p. 9. Consequently, only one witness for Employer, Bowser, ultimately offered testimony in support of Employer and against Claimant.

Claimant's sole witness, Diane Harris, was then called to testify. Harris testified that she witnessed the incident in question. She further testified that she heard Claimant

arguing with another employe in the break room, the entrance to which is five feet from her office, and immediately intervened, but observed no blows being exchanged or other physical contact or the brandishing of a weapon by Claimant and that Claimant left the area upon her request. Hearing Transcript, pp. 10–11.

After Harris' testimony, the following exchange took place:

QR: ... Any rebuttal testimony from any of your witnesses?

AEL: Can we recall Mr. well we can not recall anybody.

QR: Yes you can. To present rebuttal testimony.

QEL: We would like to have Mr. Bowser.

QR: Okay. Mr. Bowser.

QCL: I will object to that Mr. Referee. I made that point before he was going to be recalled again he had to be sequestered.

QR: Let me ask you a question sir. No I will tell you what I am not even going to answer you sir. I am going to let Mr. Bowser testify and I will state the reason for that on the record. Alright. But I do not want any argument from you about it.

ACL: That is my job sir.

QR: Okay. Fine. But I am telling you I will not entertain any further argument. You have made your point and my ruling is that Mr. Bowser can testify and present rebuttal testimony. Now you wanted him sequestered when this woman was, when your witness was making a statement? ...

ACL: No sir. You agree with the sequestration request initially. And that means after a witness testifies he goes out the door.

QR: Alright ... Let us proceed.

Hearing Transcript, p. 12. Bowser then testified on rebuttal that Harris witnessed only the end of the incident in question and, at that point, there were no weapons visible. *Id.*, p. 13. Claimant's counsel subsequently cross-examined

Bowser and presented rebuttal testimony from Harris, who, again, testified that she immediately intervened upon hearing argumentative tones in the break room. *Id.*, pp. 13–14.

Due process of law, of course, must be afforded in unemployment compensation proceedings. *Knox v. Unemployment Compensation Board of Review*, 12 Pa.Commonwealth Ct. 588, 317 A.2d 60 (1974). However, having exhaustively reviewed and considered the record here, we cannot conclude that the referee's conduct deprived Claimant of his due process rights or generated a level of unfairness that permeated the hearing so as to strike at the conscience.

Although the referee may have exhibited some impatience, such conduct, in our opinion, did not substantially prejudice Claimant's right to a full and fair hearing. Claimant was provided ample opportunity to present his case through direct and rebuttal testimony as well as cross-examination. Furthermore, contrary to Claimant's contention, the record indicates that the referee did not improperly, or otherwise, close the record on the first day of hearing prior to the conclusion of Claimant's cross-examination.

■ As to Claimant's final assertion, the decision to grant or deny a request for sequestration of witnesses is left largely to the discretion of the presiding officer, *Hussar v. Unemployment Compensation Board of Review*, 61 Pa.Commonwealth Ct. 28, 432 A.2d 643 (1981), and will not be reversed absent clear abuse of discretion. *See Commonwealth v. Hamilton*, 459 Pa. 304, 329 A.2d 212 (1974). Keeping this in mind, we note that Claimant requested, and was granted, sequestration of Employer's witnesses primarily to prevent possible collusion.

■ However, as the hearing proceeded, it became evident that Employer would present only one witness, Bowser, who obviously could not collude with himself. The purpose for sequestration, at least on this basis, thus no longer existed. Likewise, had the referee denied Claimant's

request for sequestration in the first instance, such denial, in our view, would not have constituted error. *See Hussar.*

In any event, although our independent research has not disclosed any cases directly on point, and the parties have cited none, it is our opinion that we may not reverse the decision of the unemployment compensation authorities under the circumstances presented here unless we find that Claimant was prejudiced by the referee's ruling to allow Bowser to testify on rebuttal despite having heard Harris' testimony.

Prior to hearing Harris' testimony, Bowser testified that the incident in question was not stopped until after the occurrence of the crucial events upon which Claimant's discharge was based. Hearing Transcript, pp. 3–4. This testimony implicitly indicates, without naming Harris, that the party or parties responsible for stopping the incident were not in the break room to witness the crucial portions thereof. Bowser's rebuttal testimony simply made this point more explicit. Furthermore, after Bowser was called to testify on rebuttal, Claimant's counsel not only cross-examined him, but was also permitted to present his own rebuttal testimony from Harris.

Because we find no abuse of discretion by the referee in subsequently lifting the sequestration previously granted since the purpose therefor no longer existed, the request could have been properly denied in the first instance and the record demonstrates no resulting prejudice to Claimant, we find no basis upon which to reverse the Board's order and remand this case for a new hearing, as requested by Claimant. Accordingly, the order of the Board upholding the referee's denial of benefits will be affirmed.

## ORDER

AND NOW, this 28th day of December, 1990, the order of the Unemployment Compensation Board of Review, at Appeal No. B–89–1–M–843 and Decision No. B–280327, dated March 1, 1990, is affirmed.