John Scott Caceres, : 
             Petitioner : 
                               :   No. 1307 C.D. 2018
                               : 
             v. : 
                               :   Submitted: February 8, 2019
Unemployment Compensation : 
Board of Review, : 
             Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ELLEN CEISLER, Judge

### *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                           FILED: April 5, 2019

John Scott Caceres (Claimant) petitions for review, *pro se*, of the August 8, 2018 order of the Unemployment Compensation Board of Review (Board) affirming a referee's decision that found Claimant ineligible for unemployment compensation (UC) benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[1]

### Facts and Procedural History

Claimant worked as a full-time sales consultant with Airport Road Motors HO LLC (Employer) until March 1, 2018, when he was discharged for the repeated

---

[1] Section 402(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) provides that "an employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act." 43 P.S. §802(e).

offense of removing a vehicle from Employer's property without permission and/or a reasonable purpose. (Referee Finding of Fact (F.F.) Nos. 1, 17.) Claimant applied for UC benefits and, on April 12, 2018, the local service center found Claimant ineligible. (Certified Record (C.R.) at Item No. 5.) Claimant appealed and a referee conducted a hearing on May 16, 2018, at which Claimant and a witness for Employer appeared and testified. After the hearing, the referee made the following findings of fact:

1. [Claimant] was last employed as a full-time sales consultant with [Employer] on March 1, 2018.

2. Under [Employer]'s policy/procedures for driving a vehicle, all employees are required to accompany a customer on a test drive.

3. For insurance purposes, a copy of the driver's current license is required and must be left at the dealership prior to the test drive.

4. The employee must use a vehicle key that is located in a locked cabinet.

5. The employee uses a special code to access the locked cabinet.

6. The employee must also put a license plate on the vehicle before removing it from the property.

7. Employees are to provide the dealership with the customer's name, customer's driving license, the vehicle they are [sic] interested in and the vehicle that is being test driven prior to removing the vehicle.

8. Employees are not allowed to use a vehicle for their own personal use without express authorization from their immediate supervisor.

9. As a sales consultant, [Claimant] was responsible to ensure these policies and procedures were followed, and [Claimant] was aware of these policies and procedures.

10. In January of 2017, [Claimant] received a written warning for taking a vehicle off the property without permission or a reasonable purpose. He also failed to use a license plate and was driving the vehicle in a reckless manner.

11. [Claimant] was informed that the vehicles are to be operated in complete compliance with state, local, federal and dealer laws and policies.

12. If the policies and laws are not followed, the insurance company will not protect the dealership in the event of a mishap.

13. [Claimant] was made aware of this.

14. On February 22, 2018, [Claimant] took a high performance vehicle from the dealership without permission or a reasonable purpose to do so.

15. [Claimant] used the vehicle to pick up sandwiches from a sandwich shop in downtown Hazleton.

16. Claimant did not use the keys from the locked cabinet and did not have a license plate on the vehicle.

17. Once the director was made aware of this and conducted an investigation, [Claimant] was discharged on March 1, 2018 for [the] repeated offense of removing a vehicle from the property without permission and/or reasonable purpose.

(Referee F.F. Nos. 1-17.) The referee noted that Claimant contended "he took the vehicle on a test drive with a customer." (Referee decision at 2.) The referee also recognized that Claimant admitted that Employer "has a very strict process before

taking the vehicle for a test drive, which includes taking the customer's driver's license, accessing the keys and plate from the locked cabinet, which uses a code, documenting the type of vehicle the customer is looking for, and putting plates on the vehicle." *Id.* The referee explained that Employer had no documentation of any such customer or record that the keys and/or a license plate were removed from the locked cabinet. *Id.* Additionally, the referee observed that Claimant acknowledged that "the customer did not have a valid driver's license when she came to the dealership and she could not operate a stick shift, which is the type of vehicle" that was taken for a test drive. *Id.* Thus, the referee did not find Claimant's assertions credible. *Id.* at 3. The referee concluded that Claimant violated Employer's rules and policies and that his actions showed a disregard for the standards of behavior an employer has a right to expect of its employees, as well as a disregard of Employer's interest. *Id.* Consequently, the referee determined that Claimant was ineligible for benefits under section 402(e) of the Law. *Id.*

Thereafter, Claimant appealed to the Board arguing that the referee erred and requested a remand hearing in order to present the testimony of an additional witness. The Board concluded that the referee's decision was proper under the Law. (Board order at 1.) The Board adopted and incorporated the referee's findings and conclusions and made the following additional findings of fact:

15a. [Claimant] used the vehicle to drive a customer to her home. The customer had no interest in purchasing a vehicle and she was unable to drive the vehicle because she did not have a driver's license and she could not operate a manual transmission.

17a. As part of the investigation, [Employer] reviewed its records. There was no record that [Claimant] used his code to get the keys to the vehicle out of the lock box. There was no record that [Claimant] signed out a license plate. There was no record of the customer's identification card.

4

17b. [Employer] reviewed a video tape of [Claimant] taking the motor vehicle. The video tape shows [Claimant] did not place a license plate on the vehicle prior to driving it off the lot.

(Board F.F. Nos. 15a, 17a-17b.) The Board also noted that Claimant requested a remand hearing to explain his position and to present the testimony of an additional witness. (Board order at 1.) The Board denied Claimant's request for a remand hearing because Claimant had not alleged sufficient grounds for the case to be re-opened for the purpose of taking additional evidence. *Id.* Therefore, the Board ruled Claimant ineligible for UC benefits. *Id.* at 2.

Claimant now petitions this Court for review of the Board's order,[2] essentially arguing that the three additional factual findings made by the Board are not supported by substantial evidence.

## Discussion

Initially, we note that section 402(e) of the Law provides that an employee shall be ineligible for UC benefits for any week in which his unemployment is due to willful misconduct connected to his work. 43 P.S. §802(e). Willful misconduct is defined as (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of an employer's rules; (3) disregard of the standards of behavior that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations. *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422,

---

[2] Our review of the Board's order "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

5

425 (Pa. 2003). Whether a claimant's conduct constitutes willful misconduct is a question of law fully reviewable by this Court on appeal. *Temple University of the Commonwealth System of Higher Education v. Unemployment Compensation Board of Review*, 772 A.2d 416, 418 n.1 (Pa. 2001). If an employer alleges misconduct because of a claimant's violation of a work rule, the employer must prove the existence of the rule and its violation, and the burden then shifts to the claimant to show good cause for his actions. *McKeesport Hospital v. Unemployment Compensation Board of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993).

Claimant argues that Employer's reasons for his discharge are false. He contends that Employer did not provide any proof of its accusations against him. Specifically, Claimant asserts that Employer never showed the referee the video of Claimant leaving the parking lot with the vehicle. Claimant also maintains that he wanted to present additional evidence at the hearing but the referee "implied it was not necessary." (Claimant's brief at 9.)

Claimant further argues that he gave his manager the customer's license and that he gave paperwork to Employer's Finance Manager demonstrating that he sold the vehicle to the customer. Claimant contends that he not only sold the vehicle to the customer, but that he also took her on a test drive with the license plate on the rear windshield of the vehicle where it was required to be placed. Claimant also attached paperwork to his brief with the alleged customer's name circled. Because he contends Employer's accusations against him are false, Claimant requests that we reverse the order of the Board.

In UC cases, the Board's findings of fact must be supported by "[s]ubstantial evidence [which] is defined as 'such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.'" *Western & Southern Life Insurance Co. v. Unemployment Compensation Board of Review*, 913 A.2d 331, 335 (Pa. Cmwlth. 2006) (quoting *Guthrie v. Unemployment Compensation*

*Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999)). "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *Western & Southern Life Insurance Co.*, 913 A.2d at 335. This Court is bound "to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony" to determine if substantial evidence exists for the Board's findings. *United States Banknote Co. v. Unemployment Compensation Board of Review*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990).

Moreover, in UC cases, "it is well-settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight." *Serrano v. Unemployment Compensation Board of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016). "The Board is also empowered to resolve conflicts in the evidence." *Id.* "'Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review.'" *Id.* (quoting *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1388 (Pa. Cmwlth. 1985)).

Here, Claimant's argument is nothing more than an attempt to have this Court accept his version of the facts, instead of those found by the Board. After a careful review of the record, we conclude that there is substantial evidence to support the Board's determination that Claimant engaged in willful misconduct by not following Employer's procedures and policies when removing one of Employer's vehicles from its property.

Claimant acknowledged that Employer has "a very strict process" for taking out Employer's vehicles for customer test drives. (C.R. at Item No. 9, Notes of Testimony (N.T.) at 12.) In particular, Claimant stated that employees must obtain the customer's driver's license and give it to the manager, who scans it into the system.

7

*Id.*[3] Claimant testified that in order to go on a test drive employees also need to obtain a license plate and are not allowed to drive on the road without a license plate. *Id.* Further, employees must obtain the vehicles' keys. (N.T. at 13.) Both the keys and license plates are obtained from the "key machine," into which employees must enter a special code to take out the items. (N.T. at 13, 16.) He admitted that the process for taking out a vehicle was "implemented [sic] into [his] head." (N.T. at 15.)

Employer's Director, Adam Walsh, testified and presented documents showing that Claimant read the employee handbook and agreed to follow the guidelines in the handbook. (N.T. at 2.) Walsh explained that sales consultants must receive permission from a manager before removing vehicles from Employer's property. (N.T. at 5.) He noted that before a test drive occurs, sales consultants must also make a photocopy of the customer's driver's license, which is kept on record, and that sales consultants may not go on test drives unless they obtain the customer's driver's license information. (N.T. at 5, 21.) Walsh stated that the driver's license and license plate requirements exist for insurance reasons. (N.T. at 10.)

Walsh testified that on February 22, 2018, there was no record of Claimant taking out two vehicles with a customer or signing the vehicles' keys out. (N.T. at 3-4, 9.) However, when Walsh pulled up the high definition surveillance video camera, he observed Claimant taking the customer out in two vehicles that "he had no reason to take." (N.T. at 4.) Walsh stated that Claimant admitted to him that the customer was uninterested in and had no intent to purchase the vehicles that were driven. (N.T. at 4, 22.) Walsh explained that managers do not authorize test drives where customers have no interest in a vehicle. (N.T. at 22.) He also said that Claimant did not use a license plate when taking out the vehicles. (N.T. at 4.) Specifically, Walsh stated that

---

[3] The employee handbook also states that "[f]or insurance purposes, a copy of the driver's current license is required and must be left at the dealership prior to the test drive." (C.R. at Item No. 4.)

the video cameras, which are very high quality, did not show Claimant attach a license plate to the vehicles before removing them from Employer's property. (N.T. at 7.)

Walsh noted that the vehicles taken out by Claimant were "high performance vehicle[s]" that may not be taken out unless permission is given by a manager. (N.T. at 6.) Yet, Walsh testified that there is no record that the keys to these vehicles were removed from the key machine. *Id.* He explained that the keys are kept locked and secured in the key machine and that when keys are removed from the key machine it takes a picture and thumbprint record of the employee, but in this instance there was no record of Claimant removing the keys from the key machine. *Id.* Walsh also introduced a log from the key machine that showed there was no record of Claimant taking out the two vehicles in question on February 22, 2018. (N.T. at 10-11.) Walsh testified that a second set of keys is kept in the "vehicle pack" in the "salesperson's area," but removal of keys from the vehicle pack is cause for "instant termination." (N.T. at 6.) Walsh noted that Claimant had previously been warned for a similar type of incident. (N.T. at 9.)

Claimant admitted that the customer did not have an "actual" driver's license. (N.T. at 12.) Claimant stated that the vehicles that were taken out were manual transmission and that he drove the vehicles because the customer did not know how to drive a manual transmission. (N.T. at 18-19.) He also asserted that although he initially drove the vehicles, the customer subsequently did as well. (N.T. at 19.) Claimant conceded that he had driven the customer home in one of the vehicles and that he had used the vehicle to pick up food at a sandwich shop after dropping off the customer. (N.T. at 24.) Claimant testified that salespeople are permitted to take out vehicles at any time and for any reason, as long as they receive permission from a manager and that, here, both of his managers were aware he took the vehicles. (N.T. at 12, 16.) Conversely, Walsh stated that the customer was not interested in the vehicles on the day in question, he only observed Claimant driving the vehicles, and that managers are

9

not authorized to allow salespeople to drive vehicles for *any* reason, such as to drive customers home. (N.T. at 4, 19, 21.)

Walsh explained that Claimant was discharged due to his willingness to expose Employer to liability on multiple occasions. (N.T. at 8.) He stated that the final incident that resulted in Claimant's termination was when he took "two different vehicles out, without license plates, without getting the customer's driver's license" and without signing out the keys in the proper manner. *Id.* Claimant admitted he was told that he was fired for not having the customer's driver's license in the system, for taking a vehicle out without permission, and for not having a license plate on the vehicle. (N.T. at 15.)

When examining the foregoing testimony in the light most favorable to Employer, as we must because the Board found in its favor, there is undoubtedly substantial evidence to support the Board's findings. First, there is substantial evidence in the record to support the findings that Claimant did not obtain keys from the locked cabinet using a special code, obtain a copy of the customer's driver's license information, or affix a license plate to the vehicles, as was required to test drive vehicles. (Board F.F. Nos. 17a-17b; Referee F.F. Nos. 5-8.) In particular, both Claimant and Employer's witness testified regarding Employer's policies and procedures for driving Employer's vehicles, and Employer's witness stated there was no record of Claimant obtaining the keys from the locked cabinet or the customer's driver's license information for the two vehicles that were driven on February 22, 2018. Employer's witness also testified that he did not observe Claimant placing a license plate on the vehicles on the surveillance video.[4]

---

[4] Claimant impugns the Board and referee for relying on Employer's testimony regarding the videotape that showed Claimant taking out Employer's vehicles, where the actual videotape was not admitted into evidence. However, in a UC referee hearing, a witness is competent to testify as to what he observed on a videotape without submitting it into evidence, as the conduct on a video is not

10

Second, there is substantial evidence in the record that the customer was uninterested in purchasing Employer's vehicles, that Claimant used one of the vehicles to pick up food from a sandwich shop, and that Claimant's use of the vehicles was not authorized. (Board F.F. No. 15a; Referee F.F. No. 15.) Specifically, Claimant testified that the customer could not drive a manual transmission vehicle, which supports the finding that she was not interested in the vehicle, and he admitted that he used one of the vehicles to drive the customer home and to go to a sandwich shop. Employer's witness noted that managers cannot authorize the use of Employer's vehicles for such purposes and that Claimant told him that the customer was uninterested in the vehicles. Based on this testimony and the fact that Claimant did not follow the established procedures for driving a vehicle, there is also substantial evidence of record to support the finding that Claimant removed a vehicle from the property without permission and/or a reasonable purpose.

Claimant argues that all of the accusations against him are false. He implies that he had permission to drive Employer's vehicles and contends that he both obtained the customer's paperwork and attached the license plate to the vehicles, as required by Employer's policies. He also maintains that he sold a vehicle to the customer the same day of the test drive.[5] However, the referee, and by incorporation the Board, concluded that Claimant's assertions regarding the use of the vehicle were

hearsay because it is non-assertive. *See Yost v. Unemployment Compensation Board of Review*, 42 A.3d 1158, 1164 & n.6 (Pa. Cmwlth. 2012); *see also Rich v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 776 C.D. 2013, filed January 15, 2014), slip op. at 6-7 (same). Pursuant to this Court's Internal Operating Procedures, an unreported opinion of the Court filed after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

[5] Claimant has attached documents to his brief that supposedly demonstrate that he sold a vehicle to the customer. However, it is axiomatic that this Court may not consider documents attached to a brief that are not part of the certified record. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 713 n.6 (Pa. Cmwlth. 2013); *Croft v. Unemployment Compensation Board of Review*, 662 A.2d 24, 28 (Pa. Cmwlth. 1995).

11

not credible.  (Board decision at 1; Referee decision at 2-3.)  As the arbiter of credibility, the Board was free to accept or reject the testimony of the witnesses in whole or in part and, on appeal, we may not disturb such determinations.  Because Claimant did not follow Employer's established policies and procedures for removing vehicles from Employer's property and also did not have permission and/or a reasonable purpose to use the vehicles, we conclude that the Board correctly determined that Claimant committed willful misconduct by violating Employer's rules and policies, disregarding Employer's interests, and disregarding the standards of behavior an employer has a right to expect from its employees.[6]

### Conclusion

Because there is substantial evidence in the record to support the Board's determination that Claimant engaged in willful misconduct, the Board's order denying Claimant UC benefits is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

---

[6] Claimant also argues that he could not present additional evidence at the hearing because the referee "implied it was not necessary." (Claimant's brief at 9.)  Yet, the record reveals that at the hearing, Claimant testified on his own behalf, was given the opportunity to cross-examine Employer's witness, was not prohibited from offering any available evidence, and was permitted to render a closing statement.  Where the record reveals that the claimant was "provided ample opportunity to present his case through direct and rebuttal testimony as well as cross-examination," any claim that he was denied a fair hearing cannot be sustained.  *Hall v. Unemployment Compensation Board of Review*, 584 A.2d 1097, 1101 (Pa. Cmwlth. 1990).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Scott Caceres,       :
     Petitioner   :
             :  No.  1307 C.D. 2018
   v.         :
             :
Unemployment Compensation  :
Board of Review,      :
     Respondent  :

## ***ORDER***

AND NOW, this 5th day of April, 2019, the August 8, 2018 order of the Unemployment Compensation Board of Review is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge